IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

NEHEMIAH LAMAR HICKS                                             PLAINTIFF

                    v.                    Civil No. 14-5045

CORPORAL DAVID WILLIAMS, Fayetteville
Police Department                                               DEFENDANT

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff initially proceeded *pro se* and *in forma pauperis.*  However, Plaintiff is now represented by retained counsel.

Plaintiff maintains his constitutional rights were violated in a variety of ways when he was arrested by the Defendant, Corporal David Williams, on July 20, 2013.  Defendant has now filed a motion for summary judgment (Doc. 24).  Plaintiff has responded (Doc. 31) to the motion.  The motion is before me for preparation of this report and recommendation.

    **1.  Background**

On July 20, 2013, a juvenile male made a call to 911 from a residence on Oleander in Fayetteville.  Defendant's Exhibit (hereinafter Deft's Ex.) B at pg. 5; Deft's Ex. C at ¶ 3.  The juvenile male reported that his stepsister was being choked by his stepfather, the Plaintiff.  Id.  The juvenile male hung up.  Deft's Ex. B at pg. 5.

The Defendant Corporal David Williams, Corporal Julia McKinney, Sergeant Shannon Gabbard, and Lieutenant Tim Franklin responded to the call. Defendant spoke with the juvenile male who made the call.  Deft's Ex. A at ¶ 7.  He was upset and reported that Plaintiff grabbed his stepsister by the throat and choked her while he held her against wall.  Id.  The juvenile male reported that

Plaintiff was very violent and he had seen him punch his Mother in the face before.  Id.

Defendant also spoke with the juvenile female victim who was reluctant to talk.  Deft's Ex. A at ¶ 6.  She was afraid of her stepfather and also concerned that her Mother would be angry at her for talking to the police about what happened.  Id.  "She eventually reported that [the Plaintiff] grabbed her by [the] throat and strangled her for approximately five seconds, that she could not adequately breathe during that time, and she was very afraid."  Id.  There were no visible marks on her neck at the time.  Id. at pg. 7; Deft's Ex. B at pg. 5.  The mother indicated she had not seen anything and was in the shower at the time.  Deft's Ex. A  at pg. 6.

Plaintiff advised Corporal McKinney that he had disciplined the juvenile female for being disrespectful by grabbing her near the upper chest and lifting her up.  Deft's Ex. B at ¶ 4.  Plaintiff denied strangling the juvenile female and asserted that he was within his rights to discipline a child in his own home.  Id.

Based on the information obtained that day, Defendant believed probable cause existed to arrest the Plaintiff for aggravated assault and domestic battery 3rd.  Deft's Ex. A at ¶ 9.  Corporal McKinney, Sergeant Gabbard, and Lieutenant Franklin also believed probable cause existed to arrest the Plaintiff.  Deft's Ex. B at ¶ 6; Deft's Ex. C at ¶ 5; Deft's Ex. D at ¶ 5.  Plaintiff was arrested and taken to the Washington County Detention Center to be booked.  Deft's Ex. A at ¶ 10; Deft's Ex. H.[1]  At the time of the arrest, the Plaintiff was on parole for possession of a controlled substance with intent to distribute and possession of drug paraphernalia.  Deft's Ex. G at pg. 11.

Ultimately, Plaintiff was only charged with assault in the first degree.  Plaintiff's Exhibit

---

[1] Exhibit H consists of dash cam video from two patrol cars, including Defendant's,  and audio of the Defendant speaking with, among others, the two minors.

(hereinafter Plff's Ex.) A.  This charge was later nolle prosequi due to the unavailability of the victim. Plff's Ex. B.

Defendant had previously investigated the Plaintiff in connection with six cases in 2011 and 2012.  Deft's Ex. at ¶ 11.  Five of the cases involved domestic violence claims against the Plaintiff. Id.  Defendant was not the arresting officer in any of those cases.  Id.

On August 27, 2013, a parole revocation hearing was held.  Deft's Ex. A at ¶ 13.  Defendant testified about training he "had received that indicates that a person can be strangled and not show visible signs of injuries."  Id.  Plaintiff's parole was revoked based on a finding, by the preponderance of the evidence, that he had committed a violation of his parole when he engaged in a violent act against a minor on July 20, 2013. Deft's Ex. F at ¶ 3.

Plaintiff submitted a professional standards complaint form against the Defendant.  Deft's Ex. E at ¶ 1.  Lieutenant Bradley Renfro conducted the investigation of the complaint and concluded Defendant followed proper protocol with respect to the arrest on July 20, 2013, and that probable cause existed for the arrest.  Id. at ¶ 5.

Plaintiff brings claims for false arrest, false imprisonment, malicious prosecution, and slander. He also maintains Defendant gave perjured testimony at the parole revocation hearing.

## 2.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving

party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

First, Defendant maintains that under the totality of the facts based on reasonably trustworthy information, he was justified in believing there was probable cause to conclude the Plaintiff committed the offenses for which he was arrested. Second, Defendant argues he did not violate a clearly established statutory or constitutional right of the Plaintiff and is therefore entitled to qualified immunity. Finally, Defendant maintains the claims of perjury, slander, and malicious prosecution are not actionable under 42 U.S.C. § 1983.

Plaintiff denies that there was probable cause for his arrest. Plaintiff also contends there are issues of fact as to the perjury or false accusation claim and the false imprisonment claim. He concedes that neither malicious prosecution or slander constitute actionable claims under 42 U.S.C. § 1983. However, he notes the Court may exercise its discretion to hear supplemental state law claims.

### (A). The Arrest

"Probable cause exists if the totality of the facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense."

Flynn v. Brown, 395 F.3d 842, 844 (8th Cir. 2005)(internal quotation marks and citations omitted). "[D]etermining if probable cause exists is not an exact science." Brodnicki v. City of Omaha, 73 F.3d 1261, 1265 (8th Cir. 1996).

Plaintiff maintains there is a genuine issue of material fact regarding whether the totality of the circumstances gave rise to the belief that Plaintiff committed a criminal offense. However, Plaintiff agrees that the male juvenile placed a call to 911 and reported that Plaintiff was choking his sister. Plaintiff also agrees that Defendant spoke with both the male juvenile and the female juvenile who reported that the Plaintiff had been choking the female juvenile. The audio of the Defendant speaking with the juveniles verifies that both juveniles indicated the Plaintiff was choking the female juvenile. While Plaintiff asserts he was merely disciplining her and denied choking her, it is undisputed that Plaintiff applied some amount of force to the female juvenile.

Viewing the facts as a whole at the time of Plaintiff's arrest, I believe a prudent person would have been justified in believing Plaintiff had committed the offenses of: aggravated assault in violation of Ark. Code Ann. § 5-13-204;[2] and domestic battering in the third degree in violation of Ark. Code Ann. § 5-26-305(a)(2).[3]

Plaintiff next argues it was Defendant's personal bias against the Plaintiff rather than the totality of the circumstances that led to the Plaintiff's arrest. Plaintiff asserts there is a question of fact as to whether the Defendant's prior history with the Plaintiff played a role in his finding that probable cause existed. Assuming this is true, it does not negate the finding that probable cause existed.

---

[2] "A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he or she purposely: (1) Engages in conduct that creates a substantial danger of death or serious physical injury to another person."

[3] "A person commits domestic battering in the third degree if: . . . [t]he person recklessly causes physical injury to a family or household member."

Defendant's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996).   In other words, an officer's "alleged motive for the arrest cannot vitiate an otherwise lawful arrest." Peterson v. Kopp, 754 F.3d 594, 599 (8th Cir. 2014)(citation omitted).

**(B).  Qualified Immunity**

To provide a complete analysis of Defendant's arguments in support of summary judgment, I turn to the question of whether Defendant is entitled to the protection afforded by qualified immunity. "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991)(quoting, Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)).   The inquiry is normally one of pure law.  J.H.H. v. O'Hara, 878 F.2d 240, 243 (8th Cir. 1989).

In the context of warrantless arrests,

> qualified immunity applies when a reasonable officer *could have believed* the arrest to be lawful, in light of clearly established law and the information the arresting officer possessed.  The issue for immunity purposes is not probable cause in fact but arguable probable cause, that is, whether the officer should have known that the arrest violated plaintiff's clearly established right.

New v. Denver, No. 13-3330, 2015 WL 3429400, *2 (8th Cir. May 29, 2015)(emphasis in original)(internal punctuation marks and citations omitted).  Clearly, Defendant is entitled to qualified immunity because a responsible officer, based on the undisputed facts explained above, could have believed the arrest to be lawful and there was, at the very least, arguable probable cause to arrest the

Plaintiff.

### (C).  False Imprisonment

Having concluded Plaintiff was lawfully arrested, it follows that no wrongful detention occurred.  The fact that the charges were later dropped does not alter this conclusion.  In <u>Baker v. McCollan</u>, 443 U.S. 137 (1979), the Supreme Court stated:

> The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released. Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights "without limits." *Patterson v. New York*, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977). "Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." *Ibid.*
>
> The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law." A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers-all of whom may be potential defendants in a § 1983 action-is entirely consistent with "due process of law."

*Baker*, 443 U.S. at 145-46.

### (D).  False Statements/Perjury

Plaintiff maintains Defendant gave false or perjured testimony during the parole revocation hearing.  Plaintiff argues that Defendant is not entitled to the absolute immunity afforded witnesses because he acted as a complaining witness and initiated criminal prosecution by submitting a legally invalid arrest warrant.

I disagree.  First, as noted above, I have found probable cause existed for the arrest.  Second, Defendant testified as a witness in the parole revocation hearing and is entitled to absolute immunity. <u>Briscoe v. LaHue</u>, 460 U.S. 325 (1983)(A witness at trial has absolute immunity from suit under § 1983 for giving false testimony damaging to a subject of that testimony).  Third, Plaintiff's claims for

-7-

compensatory and punitive damages are barred by the principles announced in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).   In <u>Heck</u>, the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus."   <u>Heck</u>, 512 U.S. 486-87.   Plaintiff's parole revocation has not been called into question in any way.

### 4.  Conclusion

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (Doc. 24) be granted and all federal claims dismissed.  As no federal law claims remain, I further recommend that the Court decline to exercise supplemental jurisdiction over the state law claims of malicious prosecution and slander.  28 U.S.C. § 1367(c)(3).

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of July 2015.

/s/ *Erin L. Setser*

HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE